This is an action in which plaintiff, insured, seeks to recover from the defendant, insurer, an amount representing the actual cash value of plaintiff's automobile, which was totally destroyed by fire, under the terms and provisions of an insurance policy issued by the defendant. Plaintiff further asks for statutory penalties to the extent of 25% of the total amount of the loss, attorney's fees, etc. After trial there was judgment in favor of plaintiff in the full sum of $1,462.50, representing the amount of the adjusted loss and 25% penalty, and further judgment for the sum of $250 as attorney's fees. From this judgment defendant has appealed.
Plaintiff's claim for 25% of the adjusted amount of the loss sustained was based upon the familiar provisions of Act No. 59 of 1921, Ex.Sess. Defendant, in resisting plaintiff's demands, while admitting the loss and its adjustment to the extent of $1,170, pleads payment of said sum, alleging that said payment was made by delivery of check to the loss payee, the General Finance Company of Winnfield, Louisiana, said check being payable jointly to plaintiff and the finance company. Defendant further averred that the terms of the policy provided that loss thereunder be paid jointly to plaintiff and the loss payee.
It is important in setting forth the salient facts involved herein that the chronological order of events in connection with this matter be specifically stated.
On September 12, 1947, when a policy of insurance issued by defendant in favor of insurer was in full force and effect, plaintiff's automobile, covered by the policy, was totally destroyed by fire. On November 17, 1948, the attorney, who was on or about that date employed by plaintiff, directed a letter to defendant's adjuster, informing it *Page 166 
of the loss by fire of the automobile, covered by the policy described in said letter, on September 12th, demanding payment of the amount of the loss.
On November 22, 1947, the adjuster replied to the letter of plaintiff's attorney, advising that they had twice before written the defendant company, insurer, requesting instructions regarding the handling of the claim, but had received no reply, and that they were, as of the same date, again writing the company.
On November 29, 1947, a letter was directed to plaintiff, who was employed in Texas City, Texas, by his attorney, enclosing proofs of loss, copies of bill of sale covering the wrecked automobile, which was being disposed of to the insurance company for its salvage value, and advising that the adjuster had proposed payment of the full value of the car in the amount of $1,170. This letter further requested the return of the enclosed papers in order that settlement might be effected. Plaintiff executed and returned the papers to his attorney, who thereupon forwarded the same to defendant's adjuster under date of December 4, 1947. On or about December 10, 1947, defendant transmitted a check or draft in the amount of $1,170, made payable jointly to plaintiff and the General Finance Company, to one Alvin S. Hahn, who was the local agent of the defendant insurer in the town of Winnfield, Louisiana. It is pertinent to note further that Hahn was the mortgagee of the destroyed automobile, operating his finance business under the name of General Finance Company. Hahn held the check in his possession from and after its receipt and did not even notify plaintiff that the check had been received until January 24, 1948, when he directed a letter to plaintiff at Texas City, Texas, advising him that the settlement by the insurance company was on hand but further demanding settlement by plaintiff of certain accounts due.
On January 28, 1948, plaintiff's attorney wrote defendant's adjuster advising that proofs of loss and bill of sale had been forwarded on December 4th, in accordance with the agreed settlement. Counsel further advised that Alvin S. Hahn was withholding delivery of check in settlement of the claim to plaintiff, insisting that plaintiff pay certain items of indebtedness to Hahn's finance company. Counsel further advised that unless settlement of the claim was fully and finally made on or before February 4th, which would mark the expiration of the sixty-day period since forwarding of proofs of loss, he would insist upon payment of the statutory penalty. In response to this letter defendant's adjuster wrote counsel that the company had fulfilled its obligation by forwarding draft payable to plaintiff and the General Finance Company in the amount of $1,170, representing the agreed loss; that the draft had been forwarded "to the agent" (Hahn); that the company had no further interest in the matter and that any further details should be taken up direct with Hahn. It is further established that plaintiff's attorney contacted Hahn, who refused to negotiate with him.
This suit was filed on February 9, 1948, and on February 11, 1948, Hahn advised plaintiff, who was in Hahn's office on that date, that he was ready to settle with him. It is significant that this offer of settlement was not made until after the accounts, which, with the exception of the mortgage debt, were due by parties other than plaintiff, had been paid.
On the basis of the above facts it is apparent that defendant is not in a position to sustain its plea of payment. It is elementary that payment presupposes a delivery to the proper person. In this instance there was never any delivery nor unconditional tender of delivery to plaintiff, who was unquestionably the proper person under the policy of insurance to receive same. The only "payment" consisted of the forwarding of a draft, which, of course, would not have constituted payment under any conditions until the proceeds had been received, to defendant's local agent at Winnfield. Unfortunately, the agent chose to receive and hold the draft, not solely in his capacity as agent, but, as is obvious from the facts reflected in the record, primarily as a creditor of plaintiff. It is indisputable that defendant's agent, Hahn, never made any tender of delivery of the draft, much less a payment to plaintiff, but attempted to use his possession of the draft, into which he had entered as defendant's *Page 167 
agent, for the purpose of effecting payment not only of the amount of his mortgage but of other accounts. It is more or less beside the point, but simply adds additional weight to the established facts, to note that these accounts were contracted by parties other than plaintiff.
It is also conclusively established that defendant was informed as to the existing conditions; fully realized that there was a conflict of interest as between the insured and its own agent, and chose to do nothing about discharging its contractual obligations to plaintiff.
Counsel for defendant urges that a tender is not necessary when the party to whom made indicates his unwillingness to accept the tender. Conceding this to be a sound legal principle, it has no application under the facts of this case for no tender was ever made to plaintiff.
Clearly the defendant insurer is convicted of not only an unseemly delay in negotiating a settlement of its obligations, but further of a woeful disinterest and lack of regard for the rights of its insured. Courts are always loath to impose statutory penalties and consistently refrain from so doing where there is evidence of complete good faith and substantial effort of a party to perform its obligations in an expeditious, proper and equitable manner.
In the instant case we are unfavorably impressed with the conduct of the defendant insurer. It is true that the defendant has alleged payment jointly to plaintiff and the loss payee under the terms of the policy, but neither the policy nor plaintiff's proofs of loss, nor any other pertinent documents, nor any testimony in substantiation of this allegation were introduced on trial of the case.
In this case defendant has elected to rest upon a technical and strained defense. Knowing that a dispute existed as to the delivery of the proceeds due under the adjustment, defendant, in order to protect itself from a penalty, could and should have deposited the proceeds of the policy and cited the contesting claimants to assert their respective claims thereto. Benedict v. Grand Lodge, K. P., La. App., 148 So. 280. Failing this precautionary procedure defendant cannot at this late date avoid the infliction of the penalty imposed by statute.
With respect to the quantum, no issue has been made by defendant as to the principal amount. The penalty of 25% is mandatory under the statute and defendant has not contested the amount of $250 which was awarded as attorney's fees.
For the reasons assigned, the judgment appealed from is affirmed at appellant's cost.